IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BRANDON D. BRADLEY, SR., also known as
BRITTNEY BRADLEY,

        Plaintiff,

 v.                  OPINION and ORDER

LEIGHA WEBER, SEAN PRICE,
MARIA GAMBARO, SUSAN NOVAK,       20-cv-48-jdp
LUCAS WEBER, HEATHER FRANK,
and FIONA GIBBONS,

        Defendants.

---

  Pro se plaintiff Brandon D. Bradley, Sr., also known as Brittney Bradley, is a transgender woman incarcerated at Columbia Correctional Institution (CCI). Bradley says that CCI officials refused to classify her as transgender, forced her to live with a cellmate who then sexually assaulted her, and gave her inadequate medical treatment after she was assaulted. After screening Bradley's complaint under 28 U.S.C. §§ 1915 and 1915A, I gave her leave to proceed on claims against defendant CCI officials under the Eighth Amendment to the United States Constitution. Dkt. 22. Bradley filed several proposed amendments to her complaint, which I denied because they did not comply with the Federal Rules of Civil Procedure. Dkt. 57. In that order, I told Bradley that she could file one final proposed amended complaint containing all of her allegations regarding her treatment as a transgender inmate. Bradley has now done so. Dkt. 60.

  I will grant Bradley's motion to amend her complaint. Her amended complaint, Dkt. 60, will replace her initial complaint as her operative pleading. I will give her leave to proceed on Eighth Amendment failure-to-protect claims against defendants Lucas Weber, Sean Price,

L. Alsum Odonovan, and Susan Novak, as well as on a state-law negligence claim against defendant Leigha Weber. I will dismiss the remainder of her claims.

ALLEGATIONS OF FACT

I draw the following facts from Bradley's amended complaint, Dkt. 60, and take them as true for the purpose of screening her amended complaint.

In February 2019, Bradley was transferred from Waupun Correctional Institution (WCI) to CCI. When she was transferred, her paperwork stated that Bradley identified and was to be treated as a transgender woman under DAI Policy 500.70.27. Bradley says that this policy requires female transgender inmates to receive a single cell because of the risk of sexual assault, but I take notice that the version of the policy that was in effect at the time states that "housing assignments shall be made on a case-by[-]case basis, considering the inmate's health and safety as well as potential programming, management and security concerns."[1] I infer from Bradley's complaint that CCI staff decided not to classify Bradley as transgender under DAI policy, although Bradley does not expressly say that this happened.

Before Bradley's arrival at CCI, WCI's security director spoke with defendant Lucas Weber to help him prepare for her arrival. At the time, one of CCI's segregation buildings, DS1, was closed, leaving DS2 as the only segregation building open. Weber knew that CCI did not have the proper accommodations and housing to accept Bradley as an inmate. Bradley does not say why CCI's accommodations and housing were inadequate, but I infer at screening that CCI lacked enough available cells to place her into a single cell because of DS1's closure.

---

[1] *See* DAI Policy 500.70.27, at 3, available at https://doc.wi.gov/DepartmentPoliciesDAI/5007027.pdf.

When Bradley arrived at CCI, she was initially placed in a single cell. But at some point in the first few weeks after she arrived, unnamed CCI officials decided to require all inmates to have cellmates. Inmates that refused to accept a cellmate would be "physically assaulted and walked down the hall nude." Dkt. 60, at 4. Bradley was in bad health and she feared being walked down the hall while naked.

In mid-March, defendant sergeant Sean Price came to Bradley's cell door and told her that she would be receiving a cellmate. Bradley asked what would happen if she didn't accept a cellmate, to which Price responded that Bradley would "go on control naked." *Id.* Bradley says that "security knew that [she] was LBGTQI" but hadn't come out yet, and she says that they knew that she "was going to be harassed," although she doesn't specifically say who knew this. I will infer at screening that Price knew that Bradley was transgender.

Bradley says that she had been charged, then acquitted, for her actions against two WCI staff members, although she does not describe these charges or her action. She says that Price made it "crystal clear that CCI doesn't like inmates who assault staff" and that if inmates get into a fight at CCI, staff spray their property, not the inmates themselves. *Id.* at 4–5. It is unclear what Price meant regarding the use of spray, but I infer that Price meant that CCI staff spray inmates' property as a punitive measure for fighting.

Bradley received a cellmate, Orion Gutowski, and showed him paperwork regarding her civil and criminal cases. Gutowski threatened to out Bradley and to "jump on [her] cases," although Bradley does not explain what Gutowski meant by this. *Id.* at 6. He used these threats to coerce Bradley into performing sexual acts with him against her will.

Bradley wrote to defendant doctor Maria Gambaro, telling her that Gutowski was forcing her into giving him sexual favors and describing how inmates who refused to take

3

cellmates were treated by CCI staff. Gambaro replied that Bradley had never been identified as transgender under DAI policy and that self-identifying was not enough to be considered for a single cell. Gambaro told her to write to CCI security, which she did. She also wrote to CCI's Psychological Services Unit (PSU), and she filed an inmate complaint. After Bradley filed her complaint, Gutowski was "abruptly" moved to another unit and her complaint was forwarded to defendant Susan Novak, CCI's warden. *Id.* at 6–7.

Around this time, Bradley says that she sent a threat to PSU saying that she would kill staff at WCI and the Dodge County Sheriff's Department. Her threat was forwarded to Captain Pitzen. Pitzen and the Columbia County sheriff interviewed Bradley, who told them how Gutowski had forced her into performing sexual acts with him. Pitzen sent Bradley to CCI's Health Services Unit (HSU).

At HSU, defendant nurses Fiona Gibbons and Heather Frank performed a what Bradley calls a "subpar" examination. *Id.* at 7. Gibbons and Frank called the University of Wisconsin Hospital, after which they told Bradley that the hospital had refused to accept her but that they would give her antibiotics to treat any sexually transmitted infections that she might have received from Gutowski. Bradley says that "[t]he more logical reason" that Gibbons and Frank told her that the hospital refused to accept her is that she "strongly suspect[s]" that if she had been sent to the hospital, "[she] would have tested positive for mercury which has symptoms of cancer which [she] was in remission from" and the hospital would have been required to report her appearance and illnesses to the federal government. *Id.* at 7–8. She offers no further explanation for this allegation.

Bradley took the antibiotics given to her by Gibbons and Frank, after which she began to feel very ill at night. She says that she is very sensitive to medications and that she should

be monitored under inpatient care to ensure that she doesn't have a negative reaction, although she doesn't say that she told this to Gibbons or Frank or that she complained about feeling ill.

Gutowski was returned to Bradley's unit and placed in a cell down the hall from her. He and other inmates would harass Bradley daily, although she doesn't say how. She was assigned another cellmate and was required to shower with him, which was humiliating to her. She says that her rights under the Prison Rape Elimination Act (PREA) were violated, although she doesn't describe how other than to say that her PREA complaint was still pending when she was required to take a new cellmate.

Pitzen asked Bradley to sign a "do not consent" or "DNC," although Bradley does not explain what this form was, what it concerned, or why Pitzen asked her to sign it. Bradley refused to do so.

Bradley says that defendant Kevin Kallas, who is a PSU staff member, and other unnamed PSU staff acted with "clear discrimination" toward her that "put [her] in harm's way of homophobic inmates and becoming a victim." Dkt. 60, at 3. She may mean that Kallas and other PSU staff were involved in the decision not to classify her as a transgender woman under DAI policy, but she does not explain what these staff did with any specificity.

Defendants Glass and L. Alsum Odonovan are Inmate Complaint Review System examiners. Bradley says that they "failed to intervene and take immediate action" after she filed an inmate complaint. *Id.* at 10–11. Bradley does not provide any details about this complaint, but I infer that it was the complaint she says that she filed regarding Gutowski after speaking to Gambaro. Bradley also says that Novak "ordered Odonovan to reject a properly formatted PREA complaint" that concerned her being required to have a cellmate while her PREA complaint was pending. *Id.* at 11.

5

Defendant Leigha Weber is the state PREA coordinator. Bradley says that it is Weber's responsibility to train CCI staff to work with transgender inmates.

ANALYSIS

I will now screen Bradley's amended complaint under the same standards that I described in my previous screening order, Dkt. 22.

In her amended complaint, Bradley attempts to state claims against four large groups of defendants in various configurations. These claims include:

- Eighth Amendment claims against Leigha Weber, Lucas Weber, Gibbons, Frank, Gambaro, Price, Pitzen, Novak, Kallas, Glass, and Odonovan, who Bradley says failed to provide her adequate healthcare after she was sexually assaulted.

- Eighth Amendment claims against defendants Lucas Weber, Novak, Price, Gambaro, Pitzen, Glass, and Odonovan, who Bradley says failed to protect her from further sexual assault after they became aware of it.

- Fourteenth Amendment and negligence claims against Novak, Leigha Weber, Lucas Weber, Gambaro, Kallas, Price, Pitzen, Frank, and Gibbons. Bradley says that because she presents as masculine with masculine traits, these defendants "assumed that [she] was manly and should defend [her]self instead of taking proper precautions to ensure [her] safety." Dkt. 60, at 10.

- Fourteenth Amendment claims against Leigha Weber, Lucas Weber, Novak, Price, Gibbons, Frank, Gambaro, Pitzen, Glass, and Odonovan, who Bradley says failed to give her proper healthcare, treatment, and housing as an "LBGTQI" inmate. Dkt. 60, at 12.

As I told Bradley in my prior order, a complaint's allegations must be clear enough and include enough detail to give a defendant fair notice of the plaintiff's claims against him or her. *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 775 (7th Cir. 1994). Blanket allegations against defendants at all levels of CCI's hierarchy are not specific enough to state a claim, and I will not give Bradley leave to proceed on claims against large groups of defendants that are

6

unsupported by specific allegations. Instead, I will consider whether Bradley may proceed on claims based on specific allegations against particular defendants.

## A. Medical needs

The Eighth Amendment bars prison officials from intentionally ignoring the risk caused by a prisoner's serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976). To state such a claim against a particular defendant, the allegations in Bradley's complaint must show two things: (1) Bradley had an objectively serious medical need that posed a substantial risk to her health or safety; and (2) the defendant intentionally ignored the risk that the medical need created to Bradley's health or safety. *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006).

In my prior screening order, I gave Bradley leave to proceed on Eighth Amendment claims against Givens and Frank for refusing to send her to a hospital after she was assaulted by Gutowski. But in her amended complaint, she says that they told her that the hospital would not accept her. Bradley appears to believe that Givens and Frank were lying when they told her this, because she says that they wanted to prevent the hospital from reporting on Bradley's condition to federal authorities. Bradley appears to believe that she was being poisoned with mercury (although she does not say when or by whom) and that Givens and Frank were fearful that this plot would be exposed. Claims that are based on "fantastic or delusional scenarios" such as this are appropriately dismissed at screening. *Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989).

Bradley's other allegations against Givens and Frank don't state Eighth Amendment claims, either. She says that these nurses gave her a "subpar" examination, but she doesn't allege that she suffered any harm because of the examination. And although she says that she felt ill after taking the antibiotics prescribed by Givens and Frank and that she should have

7

been monitored in inpatient care because of her sensitivity to medication, she does not say that she told Givens and Frank about this problem or complained that she was feeling ill. So I will not grant Bradley leave to proceed on these claims.

## B. Failure to protect

Bradley says that several defendants failed to protect her from harm. To state an Eighth Amendment failure-to-protect claim, an inmate must show that she was "incarcerated under conditions posing a substantial risk of serious harm" and that the defendant intentionally ignored that risk. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The defendant must be aware of facts that would support an inference that the inmate is at risk of serious harm, and the defendant must also draw that inference. *Id.* at 837.

Bradley has stated failure-to-protect claims against Lucas Weber and Price for requiring her to have a cellmate for the same reasons articulated in my previous screening order, Dkt. 22, at 5, so I will again grant her leave to proceed on those claims. In that order, I also gave Bradley leave to proceed on failure-to-protect claims against Leigha Weber and Novak, but in her amended complaint, she has removed her allegation that these defendants were involved in the decision to require her to take a cellmate. Because this allegation formed the basis for her failure-to-protect claims against these defendants, I will not grant her leave to proceed on those claims.

In my previous screening order, I also gave Bradley leave to proceed on a failure-to-protect claim against Gambaro based on her alleged failure to forward Bradley's complaint about Gutowski to CCI security. Bradley's amended complaint adds new facts about her interaction with Gambaro, including that Gambaro told Bradley to contact CCI security with her allegations about Gutowski. A plaintiff can plead herself out of court if the allegations in

8

her complaint, taken as true, show that she has not stated a claim upon which relief may be granted. *Epstein v. Epstein*, 843 F.3d 1147, 1150 (7th Cir. 2016). These new allegations show that Gambaro did not intentionally ignore a risk of serious harm to Bradley; instead, she told Bradley to take her concerns to CCI security. It may have been more efficient for Gambaro to do so herself, but that is not enough to support a failure-to-protect claim against Gambaro. *See Giles v. Tobeck*, 895 F.3d 510, 514 (7th Cir. 2018) ("[T]he 'mere failure of the prison official to choose the best course of action does not amount to a constitutional violation.'") (quoting *Guzman v. Sheahan*, 495 F.3d 852, 858 (7th Cir. 2007)). So I will not grant Bradley leave to proceed on such a claim against Gambaro.

Bradley says that inmate complaint examiners Glass and Odonovan violated her Eighth Amendment rights because they "failed to intervene and take immediate action to remedy the danger and harm" and because they were "deliberate[ly] indifferent to [her] needs." Dkt. 60, at 10–11. I infer from this that she means that they failed to protect her from future harm by Gutowski when they rejected her inmate complaint, as she raises no other factual allegations against both defendants. But Bradley says that Gutowski was "abruptly" removed from her cell after she filed her inmate complaint, and she doesn't allege that he continued to sexually assault her afterwards. So Bradley was protected from the risk of future sexual assault from Gutowski, and I see no other harm that the denial of her inmate complaint could have caused Bradley. Without any such risk of future harm to prevent, merely ruling against an inmate on her complaint does not violate her constitutional rights. *George v. Smith*, 507 F.3d 605, 609–10 (7th Cir. 2007). So I will not give Bradley leave to proceed on Eighth Amendment claims against Glass or Odonovan based on their rejection of her inmate complaint.

9

It is a closer call whether Bradley states a failure-to-protect claim with her allegation that Novak ordered Odonovan to reject her PREA complaint about having a cellmate while her prior PREA complaint was pending. I will infer at screening that if Odonovan hadn't rejected her complaint, Bradley would have had a single cell while her prior complaint was pending. So unlike Glass and Odonovan's denial of her inmate complaints, Odonovan's denial of her PREA complaint did result in a change in her future position. I will infer at screening that because Bradley is transgender, being forced to take a cellmate put her at a greater risk of assault. I will also infer at screening that Odonovan and Novak were aware of this risk and chose to deny her complaint anyway. So I will grant Bradley leave to proceed on Eighth Amendment claims against Odonovan and Novak. But I will caution Bradley that at summary judgment, she will have to identify evidence showing that Novak was personally involved in the decision to deny her complaint, as well as evidence that Odonovan's denial of her complaint increased her risk of suffering future harm.

Bradley says that Kallas's "clear discrimination . . . put [her] in harm's way of homophobic inmates and becoming a victim." Dkt. 60, at 3. But she includes no specific allegations about how Kallas discriminated against her, and this vague allegation standing alone is not sufficient to give Kallas notice of her claims against him. So she may not proceed on an Eighth Amendment claim against Kallas.

**C. Retaliation**

Bradley says that Price violated her First Amendment rights when he told her that CCI staff don't like inmates who assault staff and that CCI staff spray the property of fighting inmates, not the inmates themselves. She says that she understood Price to be threatening retaliation against her for defending herself in court against the charges that she had assaulted

two WCI staff members. To state a retaliation claim under the First Amendment, Bradley must allege that (1) she engaged in protected First Amendment activity; (2) she suffered an adverse action that would likely deter a person of ordinary firmness from exercising her First Amendment Rights; and (3) her First Amendment activity was at least a motivating factor behind the defendant's adverse action. *Bridges v. Gilbert*, 557 F.3d 541, 546, 552 (7th Cir. 2009).

Bradley's allegations do not satisfy the third element because nothing suggests that Price's statements were motivated by Bradley's exercise of her speech rights by defending herself in court. Nothing in Bradley's complaint suggests that Price's first statement referred to Bradley's defending herself against criminal charges instead of to the alleged staff assaults themselves. And Price's second statement is entirely unconnected to the alleged staff assaults, much less to Bradley's defending herself against them. So Bradley may not proceed on a retaliation claim against Price.

**D. Due process**

In addition to the First Amendment claim she seeks to bring against Price, Bradley also says that Price's statements to her violated her due process rights under the Fourteenth Amendment because Price "took the law into his own hands and put [her] health and safety at risk." The Fourteenth Amendment protects people from deprivation of life, liberty, or property without due process. To state a due process claim, Bradley must allege that she (1) has a cognizable liberty or property interest; (2) has suffered a deprivation of that interest; and (3) was denied due process. *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010). I will assume that Bradley's claim describes a cognizable liberty interest in defending herself against criminal charges for assaulting staff, but Price's statements did not deprive her of that interest because

11

she does not say that she was deterred from defending herself after Price made these statements. And although Bradley says that Price told her that CCI staff spray the property of fighting inmates, she does not allege that Price actually deprived her of any property by spraying it in this way or that this practice affected her in any way whatsoever. So I will deny Bradley leave to proceed on a due process claim against Price.

### E. Equal protection

Bradley says that all defendants violated her rights as a transgender inmate under the Fourteenth Amendment's Equal Protection Clause by failing to take adequate precautions for her protection or by failing to provide her with adequate housing, healthcare, and treatment. To state such a claim, Bradley must allege "that 'defendants acted with a nefarious discriminatory purpose and discriminated against [her] based on [her] membership in a definable class.'" *Word v. City of Chicago*, 946 F.3d 391, 396 (7th Cir. 2020) (quoting *Nabozny v. Podlesny*, 92 F.3d 446, 453 (7th Cir. 1996)). Neither the Supreme Court nor the Seventh Circuit Court of Appeals has determined whether transgender individuals constitute a protected class under the Fourteenth Amendment. *See Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1051 (7th Cir. 2017). But I will assume at screening that they do. *See Doe 1 v. Trump*, 275 F. Supp. 3d 167, 208 (D.D.C. 2017) (collecting cases and concluding that "transgender individuals . . . appear to satisfy the criteria of at least a quasi-suspect classification"), *rev'd on other grounds*, 755 F. App'x 19 (D.C. Cir. 2019).

But other than her vague allegations that Kallas showed "clear discrimination" against her or that several defendants "engag[ed] in reckless, discriminating behavior," Dkt. 60, at 10, Bradley doesn't accuse any defendant of discriminating against her because she is transgender. A discrimination claim must be based on more than conclusory statements that the defendants

discriminated against the plaintiff. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim.). So I will not grant her leave to proceed on an equal-protection claim against any defendant.

**F. Negligence**

Bradley says that Leigha Weber, as the state PREA coordinator, negligently failed "to properly train [CCI] staff to deal with trans women." Dkt. 60, at 9. Wisconsin law recognizes the tort of negligent hiring, training, and supervision. *See Miller v. Wal-Mart Stores, Inc.*, 219 Wis. 2d 250, 580 N.W.2d 233, 237 (1998). Like all negligence claims in Wisconsin, this claim requires a plaintiff to prove four elements: "(1) A duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury." *Id.* at 238 (quoting *Rockweit v. Senecal*, 197 Wis. 2d 409, 541 N.W.2d 742, 747 (1995)). Bradley's allegations that Leigha Weber was responsible for training CCI staff to provide a safe environment for transgender inmates, that she failed to do so, and that this failure caused harm to Bradley are enough to state a negligence claim.

Bradley's state-law negligence claim "form[s] part of the same case or controversy" as her constitutional claims, so I can exercise supplemental jurisdiction over it. 28 U.S.C. § 1367. And although Leigha Weber is not the subject of any other claims on which I am giving Bradley leave to proceed, Bradley may join her as a defendant under Federal Rule of Civil Procedure 20(a)(2) because (1) the conduct underlying Bradley's claim against her involves the same series of transactions or occurrences as Bradley's constitutional claims; and (2) questions of law and fact will arise in this lawsuit that are common to all defendants. So I will give Bradley leave

to proceed on a negligence claim against Leigha Weber. But Bradley should be aware that her negligence claim may be barred unless she has complied with Wisconsin's notice-of-claim statute, Wis. Stat. § 893.82, by notifying the Wisconsin attorney general about her state-law claim before filing this lawsuit. Defendants will be free to raise that defense as the case proceeds.

ORDER

IT IS ORDERED that:

1. The motion of plaintiff Brandon D. Bradley, Sr., also known as Brittney Bradley, to amend her complaint, Dkt. 60, is GRANTED. Bradley's amended complaint, Dkt. 60, replaces Bradley's original complaint as the operative pleading.

2. Bradley is GRANTED leave to proceed on Eighth Amendment failure-to-protect claims against defendants Lucas Weber, Sean Price, L. Alsum Odonovan, and Susan Novak. Bradley is also granted leave to proceed on a Wisconsin state-law negligence claim against defendant Leigha Weber.

3. Bradley's remaining claims are DISMISSED.

4. The Wisconsin Department of Justice may have until August 3, 2020, to inform the court whether it will accept service on behalf of Odonovan.

5. Pursuant to Magistrate Judge Stephen Crocker's order, Dkt. 62, defendants' deadline to file a motion for summary judgment on exhaustion grounds will be August 17, 2020.

Entered July 20, 2020.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge