IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BRANDON D. BRADLEY SR., also known as
BRITTNEY BRADLEY,

                            Plaintiff,                      OPINION and ORDER

   v.

                                                  20-cv-48-jdp

SEAN PRICE and LUCAS WEBER,

                            Defendants.

---

Pro se plaintiff Brandon Bradley, a transgender woman who is also known as Brittney Bradley, says that defendant prison officials Sean Price and Lucas Weber put her at risk of sexual assault by requiring her to share her cell with a cellmate who then sexually assaulted her. Defendants have moved for summary judgment, Dkt. 123, as has Bradley, Dkt. 108. Bradley identifies no evidence that she faced a particular risk of sexual assault from her cellmate. I will grant defendants' motion, deny Bradley's, and close this case. Bradley's claims were factually weak, but they were not frivolous or malicious, so I will not deem this case to warrant a "strike" under 28 U.S.C. § 1915(g) as defendants request.

UNDISPUTED FACTS

The following facts are undisputed except where noted. Bradley offered no specific objections to defendants' proposed facts, so I have taken defendants' proposed facts as undisputed unless they are contradicted by Bradley's proposed facts and supporting evidence.[1]

---

[1] Bradley's only response to defendants' proposed facts is a statement that they were submitted in bad faith. Dkt. 131, at 2. She raises the same objection to defendants' supporting evidence, which she also says has been fabricated and altered. *Id.* at 2–3. Bradley provides no support whatsoever for these accusations. As Bradley was informed in the preliminary pretrial packet

Bradley has been incarcerated at Columbia Correctional Institution (CCI) since February 2019, when she was transferred to CCI from another institution. Division of Adult Institutions (DAI) policy 500.70.27 governs the treatment and accommodation of transgender inmates.[2] The policy provides that an inmate may self-identify as transgender at any time. It also provides that self-identified transgender inmates may be diagnosed with gender dysphoria by a psychologist or psychiatrist. Bradley self-identifies as transgender, but she has not been diagnosed with gender dysphoria.

The policy states that transgender women who have completed gender confirmation surgery will generally be housed in women's prisons. The parties don't explicitly say whether Bradley has received gender confirmation surgery, but nothing in the record suggests that she has, so I infer that she has not. Under the policy, self-identified transgender women like Bradley

---

attached to Dkt. 51, to dispute a proposed fact, she must either identify specific contradictory evidence in the record or show that the fact isn't supported by admissible evidence. I will disregard Bradley's blanket objections.

[2] The DAI policy filed by defendants took effect in April 2018, about eleven months before Bradley's transfer to CCI. Dkt. 127-5. According to the Department of Corrections website, the same version of the policy is currently in effect. *See* State of Wisconsin Department of Corrections, *DAI Policies*, https://doc.wi.gov/Pages/AboutDOC/DepartmentPolicies/DAIPolicies.aspx (last visited May 5, 2021).

Bradley contends that a different version of the policy was in effect when she was transferred to CCI in 2019. Dkt. 131, ¶ 11. She says that her "prc packet" says that she "was to see prc once a year, instead of every 6 months as part of being identified under said policy, which proves alteration." *Id.*, ¶ 12. The DAI policy provides that an inmate's "[p]lacement and programming assignments" should be reevaluated at least every six months in a reclassification hearing. Dkt. 127-5, at 2, 3. So I understand Bradley to mean that her records said that she was to receive a reclassification hearing once per year, not every six months as required by the policy. But even if true, this allegation wouldn't support the inference that a different version of the policy existed at the time. And Bradley doesn't allege that she was denied a reclassification hearing to which she was entitled. I will take as undisputed that the version of the policy submitted by defendants was in effect throughout the relevant period.

2

aren't automatically assigned to women's prisons. Neither are transgender women who are housed in men's prisons automatically assigned to single cells. Instead, the policy establishes a "Transgender Committee" that is responsible for housing decisions concerning transgender inmates. Dkt. 127-5, at 2. The policy provides, "Facility and housing assignments shall be made on a case-by-case basis, considering the inmate's health and safety as well as potential programming, management and security concerns. An inmate's own views regarding safety shall be given careful consideration." *Id.* at 3.

On March 9, 2019, defendant correctional officer Sean Price transferred Bradley out of a single cell and into a shared cell with Orion Gutowski. Bradley says that Gutowski blackmailed her into performing sexual acts while they shared a cell. She filed an inmate complaint alleging that Gutowski was forcing her to perform sexual acts with him. Dkt. 127-4. An inmate complaint examiner received the complaint on March 20, forwarding it directly to CCI's warden. Gutowski was removed from Bradley's cell the same day.

A CCI investigator interviewed Bradley and Gutowski. Gutowski denied having any physical relationship with Bradley. Based on the investigation, the Department of Corrections' PREA Office concluded that there was "insufficient evidence to make a final determination as to whether or not the event occurred." Dkt. 128-2, at 10.

Bradley doesn't clearly explain how defendant Lucas Weber, who was CCI's deputy warden at the time, was involved in her cell assignment. Weber says in a declaration that he didn't make the decision to house Bradley with Gutowski, Dkt. 129, ¶ 9, and Bradley doesn't allege that Weber was involved in the decision. But Bradley says that "Weber knew his security staff did not have the accommodations for any trans women let alone myself and should have refused to accept me due to not having any single cells available." Dkt. 131, ¶ 23. So I

3

understand her to mean that Weber accepted her transfer to CCI despite knowing that CCI would be unable to provide her with a single cell.

## ANALYSIS

I begin with two preliminary matters. First, Bradley has filed what she calls a "request for admission," in which she asks me to order Price to admit that Bradley was placed in the cell with Gutowski during the second shift, not the third shift. Dkt. 118. I understand Bradley to contend that the evidence shows that her version of this event is correct. But Bradley hasn't identified any evidence other than her own declaration that supports her position, which isn't enough to resolve this factual dispute in her favor. Nor does she explain why the issue matters. So I will deny her motion, although the issue has no effect on my analysis.

Second, after defendants filed their reply brief, Bradley filed what she calls an amended surreply brief and amended proposed findings of fact. Dkt. 135. The document doesn't include a brief, but it does include some new proposed facts. Bradley had the opportunity to submit her own proposed facts both in support of her own motion for summary judgment and in opposition to defendants' motion, and she did so. Dkt. 109 and Dkt. 131. Bradley doesn't explain why she was unable to include these new proposed facts in either of those filings, so I will not give her leave to submit additional facts. But I have reviewed the submission, and it doesn't include anything that would change my analysis.

### A.  Merits

To state a failure-to protect claim under the Eighth Amendment to the United States Constitution, an inmate must show that she was "incarcerated under conditions posing a substantial risk of serious harm" and that the defendant consciously disregarded that risk.

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The defendant must be aware of facts that would support an inference that the inmate is at risk of serious harm, and the defendant must also draw that inference. *Id.* at 837. Summary judgment is appropriate if the moving party has shown that no material facts are in genuine dispute and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

Sexual assault is unquestionably a serious harm under the *Farmer* standard. And inmates, particularly transgender inmates, face a general risk of sexual assault.[3] But to successfully oppose defendants' motion for summary judgment, Bradley must do more than show that she faced a general risk of sexual assault: she must show that defendants were aware that placing her in a cell with Gutowski would pose a *specific* threat to her. *See Grieveson v. Anderson*, 538 F.3d 763, 776 (7th Cir. 2008) (Eighth Amendment plaintiff must show that prison officials were "on notice of a specific threat to [plaintiff's] safety"). Bradley identifies nothing specific about Gutowski that would have put defendants on notice that he posed a risk to her. At the time that Bradley was assigned to share a cell with Gutowski, Gutowski had only a single conduct report on his record, which had nothing to do with violence or sexual misconduct. Dkt. 127-2.

The only evidence that Bradley identifies that could support her position is her contention that both defendants knew that she was transgender when they required her to share a cell with a male cellmate. In essence, Bradley's position is that the Eighth Amendment requires any self-identified transgender woman in a men's prison to be placed into a single cell.

---

[3] *See, e.g.*, National Center for Transgender Equality et al., *Preventing the Sexual Abuse of Lesbian, Gay, Bisexual, Transgender, and Intersex People in Correctional Settings* 4 (May 10, 2010), available at https://www.prearesourcecenter.org/sites/default/files/library/8-preventingthesexualabuseof lgbtipeopleincorrectionalsettings_0.pdf.

But transgender inmates have brought lawsuits on the grounds that placing them in single cells for protection is itself discriminatory, and researchers have criticized blanket policies requiring transgender inmates to be placed in single cells.[4] I have found no case holding that single-cell confinement is required for any transgender female inmate housed in a male prison.

The only case that I have found that arguably supports a general rule that transgender inmates must be placed in single cells is *Doe v. District of Columbia*, 215 F. Supp. 3d 62 (D.D.C. 2016). In that case, a transgender woman sued prison guards who had placed her in a cell with a male inmate who then sexually assaulted her. The court denied the guards' motion for summary judgment because the plaintiff had "identifie[d] ample evidence" from which a jury could infer that the guards knew that the plaintiff faced a substantial risk of sexual assault. *Id.* at 77. Specifically, the court noted that the guards knew that the plaintiff was a transgender woman; they knew that other prison officials had already determined that the plaintiff was at risk of assault; they had failed to perform security checks on the cell after placing the plaintiff in it; and they had failed to comply with jail protocols in transferring the plaintiff into the cell. *Id.* at 77–78. The *Doe* court stressed the "cumulative effect" of the plaintiff's evidence that she faced a specific risk of assault. *Id.* at 78.

*Doe* is distinguishable. Unlike in *Doe*, the pertinent prison officials (the Transgender Committee in this case) had not concluded that Bradley faced a particular risk of assault that

---

[4] *See, e.g.*, *Robison v. Hovis*, No. 4:19-CV-2292 DDN, 2020 WL 1158125, at *3 (E.D. Mo. Mar. 10, 2020); *Hardeman v. Smith*, No. CIV 16-238-RAW-SPS, 2018 WL 1528160, at *2 (E.D. Okla. Mar. 28, 2018); Gabriel Arkles, *Safety and Solidarity Across Gender Lines: Rethinking Segregation of Transgender People in Detention*, 18 Temp. Pol. & C.R.L.R. 515, 537 (2009) ("[I]n the course of my work, I have heard from significantly more [transgender, intersex, and gender nonconforming] prisoners who were in some form of segregation against their will and seeking assistance to get out of it than I have [such] prisoners who were in general population and seeking to be placed in protective custody, although both do certainly happen.").

required single-cell housing. And Bradley doesn't allege that defendants failed to perform any specific safety duties, nor does she allege that they failed to comply with any institutional protocols regarding the cell transfer. The only similarity between Bradley and the *Doe* plaintiff is that they both faced a general risk of sexual assault as transgender women housed in male prisons. Single-cell placement is unquestionably necessary to protect transgender inmates in some situations. But I cannot say that single-cell placement is the only constitutionally appropriate method of housing self-identified transgender women in male prisons. And courts must "give a high degree of deference to the discretion of prison administration" regarding prison safety and security. *Board v. Farnham*, 394 F.3d 469, 477 (7th Cir. 2005).

Bradley identifies nothing in defendants' application of the DAI policy to her that demonstrates their conscious disregard of her safety. Defendants are entitled to summary judgment on the merits of Bradley's claims.

## B. Qualified immunity

Even if I concluded that defendants violated Bradley's rights by placing her in a shared cell, defendants would still be entitled to summary judgment under the doctrine of qualified immunity.[5] Qualified immunity protects public officials from personal liability for their unconstitutional actions unless those actions violated a right that was "clearly established at the time of the violation." *Day v. Wooten*, 947 F.3d 453, 460 (7th Cir. 2020). A right is "clearly established" if it is "sufficiently clear that every reasonable official would have understood that

---

[5] In addition to money damages, Bradley also seeks the injunctive relief of "compliance with P.R.E.A. standards." Dkt. 60, at 13. I understand Bradley to request an order that defendants place her in a single cell. Although Bradley isn't entitled to injunctive relief because I have granted defendants' summary-judgment motion on the merits, qualified immunity would not bar Bradley's request for injunctive relief, *Hannemann v. S. Door Cty. Sch. Dist.*, 673 F.3d 746, 758 (7th Cir. 2012).

what he is doing violates that right." *Id.* (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (emphasis removed)). This standard doesn't require "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). As noted above, I have found no case holding that every self-identified transgender woman housed in a male prison must be placed in a single cell. And I certainly have not found any case that places the question "beyond debate."

The United States District Court for the District of Columbia has held that qualified immunity applied under similar circumstances. *Richardson v. District of Columbia*, 322 F. Supp. 3d 175 (D.D.C. 2018). Like this case, *Richardson* involved a failure-to-protect claim brought by a transgender woman who said that her male cellmate had sexually assaulted her. The court recognized that under *Farmer*, 511 U.S. 825, "a transgender female inmate who [prison officials] know *faces a particularly high risk of assault*" has a clearly established right not to be housed with a male cellmate. *Richardson*, 322 F. Supp. 3d at 184 (emphasis added). But the court noted that *Farmer* did not address how prison officials should address "the ever-present, generalized risk of sexual assault that transgender inmates face at the hands of their cellmates." *Id.* The court concluded that the plaintiff did not have a clearly established right to never be placed in a cell with a male cellmate simply because she was transgender. *Id.*

*Richardson* is factually on point and its reasoning is persuasive. I reach the same conclusion here. Bradley has identified no evidence that she faced a particularly high risk of sexual assault, so she did not have a clearly established right to be housed in a single cell. Defendants are entitled to qualified immunity for placing her in a cell with Gutowski.

**C. Strike request**

Defendants ask me to deem Bradley's claims frivolous and malicious, contending that she has presented no evidence or legal argument in support of her claims. Dkt. 132, at 2. In effect, this would impose a "strike" on Bradley under 28 U.S.C. § 1915(g).

Bradley's claims were not well-presented. Bradley didn't submit a brief in support of her motion or in response to defendants' motion, but she supported her motion with a set of proposed facts and submitted additional facts in response to defendants' motion, Dkt. 109; Dkt. 131. Her proposed facts laid out her position clearly enough to allow me to address the merits of her claims, which were grounded in the general risk of sexual assault that transgender women face in male prisons. Defendants haven't identified anything that suggests that Bradley's filings were motivated by a malicious purpose. Defendants are plainly entitled to summary judgment on the merits of Bradley's claims, but I am not persuaded that her position was frivolous.

Defendants object that the affidavit and declaration with which Bradley supported her proposed facts were not sworn or signed under penalty of perjury. Dkt. 132, at 2 n.1. Defendants are correct, but I will not punish a pro se plaintiff for such technical failings. In any event, Bradley's amended complaint was verified under 28 U.S.C. § 1746, which would allow me to consider its factual allegations as affidavit evidence. *See Ford v. Wilson*, 90 F.3d 245, 247 (7th Cir. 1996). I will deny defendants' request.

ORDER

IT IS ORDERED that:

1. The request for admission of plaintiff Brandon D. Bradley Sr., a.k.a. Brittney Bradley, Dkt. 118, is DENIED.

2. Bradley's motion to supplement her proposed findings of fact, Dkt. 135, is DENIED.

3. Bradley's motion for summary judgment, Dkt. 108, is DENIED.

4. Defendants Sean Price and Lucas Weber's motion for summary judgment, Dkt. 123, is GRANTED. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered May 11, 2021.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge